**Affirmed as Modified in Part, Reversed and Remanded in Part, and Opinion filed May 16, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00048-CV

---

### ROBERT F. MEEKINS, JR., Appellant

### V.

### ROY WISNOSKI AND MARI KAY WISNOSKI, Appellees

---

**On Appeal from the 12th District Court**
**Grimes County, Texas**
**Trial Court Cause No. 31846**

---

## O P I N I O N

The parties dispute the nature of this lawsuit. Appellant Robert F. Meekins, Jr. characterizes it as a trespass to try title suit, while appellees Roy and Mari Kay Wisnoski contend it is "an impermissible collateral attack on a probate court's final appealable order related to the partition of . . . real property." In three issues, Meekins challenges the trial court's entry of summary judgment (1) declaring the Wisnoskis own 100% of the surface estate and 50% of the mineral estate of the

subject property, (2) ordering Meekins to take nothing, and (3) awarding attorney's fees to the Wisnoskis. We affirm as modified in part and reverse and remand in part.

### *Background*

This dispute revolves around the sale of real property. In 1958, Kathleen E. Cox deeded the surface estate and a 1/32 nonparticipating royalty interest (NPRI) in the mineral estate of certain land in Grimes County jointly to her daughter Laverne Cox Meekins and Robert F. Meekins, Sr. Meekins, Sr. is Laverne's husband and Meekins's father. Kathleen died in 1977 and devised the remainder of the mineral estate to her other daughter, Elloise Cox. Elloise died in 1992 and devised half her interest in the mineral estate to Laverne and half to Meekins. When Laverne passed away on February 3, 2003, she left a will, written in 1998, devising her share of the property to Meekins.[1]

In August 2003, a guardian was appointed for the person and estate of Meekins, Sr. On September 16, 2004, Meekins, Sr., acting through the guardian, asked the probate court to appoint an appraiser for Meekins, Sr.'s property, as he wished to sell so his estate could pay debts. The probate court appointed an appraiser, who recommended selling the entire property, believing "it to be incapable of partition [in kind]."[2] On September 1, 2005, the probate court found "the land is not capable of being partitioned [in kind]" and ordered the "entire property" to be sold "as a whole" and the proceeds to be divided "between the co-owners as appropriate, after the will of Laverne Meekins is admitted to probate." At the time, Meekins had not filed the 1998 will in the probate court proceeding.

---

[1] Laverne's 1998 will was not admitted into probate until April 5, 2006.

[2] In January 2005, the probate court declared Meekins, Sr. was entitled to all of Laverne's property based on a 1980 will filed as a muniment of title.

2

Meekins, Sr. received and accepted an offer for the property, but the title company could not find an underwriter for a title insurance policy because of uncertainty regarding Laverne's unprobated 1998 will, which devised Laverne's one-half interest in the surface estate and a 1/64 NPRI to Meekins.

Meekins, Sr. filed an application for appointment of receiver in Laverne's estate on February 9, 2006, asserting "[t]he property [was] in danger of being lost, damaged, or materially injured in that there exist[ed] an ad valorem tax suit against the property for delinquent taxes" exceeding $12,000. Laverne's 1998 will devising her share of the property to Meekins was admitted into probate on April 5, 2006. On April 17, the probate court appointed a receiver to sell the property, deduct "all necessary and proper expenses," and distribute the proceeds equally between Meekins, Sr. and Meekins. The receiver for Laverne's estate and the guardian for Meekins, Sr. executed a deed on September 15, conveying the property, with no reservations, to the Wisnoskis. The probate court signed a decree confirming the sale of the property on September 20. Meekins objected to the confirmation of sale individually and as executor of Laverne's estate on the ground that the receiver had authority to sell only the surface estate. The probate court "approved" the receiver's actions. Meekins did not appeal the probate court's orders confirming the sale and approving the receiver's actions or file a bill of review.[3]

Meekins filed the underlying lawsuit on September 10, 2010, seeking a judgment adjudicating his right to title in the mineral estate. He later amended his petition, additionally claiming an interest in 50% of the surface estate, and seeking a declaration of the status of his and the Wisnoskis' title in the property and a

---

[3] Any interested person may file a bill of review in probate court to "have any decision, order, or judgment rendered by the court, or by the judge thereof, revised and corrected on showing error therein." Tex. Prob. Code § 31.

3

judgment that his title in the property is superior to the Wisnoskis' title. The Wisnoskis answered and pleaded "not guilty." The Wisnoskis subsequently filed a traditional motion for summary judgment seeking (1) dismissal of Meekins's claims as "an impermissible collateral attack on the Probate Court's confirmation of sale," (2) a declaration that the Wisnoskis own 100% of the surface estate and an undivided 50% interest in the mineral estate, and (3) an award of attorney's fees. In response, Meekins argued that (1) the probate court did not adjudicate title, (2) Laverne's interest in the property vested in Meekins at the time of Laverne's death and thus her estate could not deed her interest in the property to the Wisnoskis, and (3) attorney's fees are not recoverable in a trespass to try title action. The Wisnoskis replied that the lawsuit is not a title case and legal title to the property was held in trust by Laverne's estate subject to the debts of and claims against the estate. The trial court entered final summary judgment in favor of the Wisnoskis, (1) declaring the Wisnoskis own 100% of the surface estate and divesting Meekins of all right, title, and interest in the surface estate; (2) declaring the Wisnoskis own an undivided 50% interest in the mineral estate; (3) ordering Meekins to take nothing by way of his claims against the Wisnoskis; and (4) awarding the Wisnoskis attorney's fees and costs.

## *Discussion*

In three issues, Meekins argues the trial court erred in (1) declaring the Wisnoskis own 100% of the surface estate and 50% of the mineral estate because title to 50% of the surface estate, 50% of the mineral estate, and a 1/64 NPRI vested in Meekins immediately upon Laverne's death; (2) ordering Meekins to take nothing because the effect of a take nothing judgment against a plaintiff in a trespass to try title suit is to vest title in the defendants and it is undisputed that Meekins owns 50% of the mineral estate; and (3) awarding attorney's fees to the

4

Wisnoskis because such fees are not available in a trespass to try title case.

We review summary judgments de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *Raynor v. Moores Mach. Shop, LLC*, 359 S.W.3d 905, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.). When the trial court grants summary judgment without specifying the grounds, we affirm if any of the grounds presented in the motion is meritorious. *Raynor*, 359 S.W.3d at 907. The Wisnoskis filed a traditional motion for summary judgment. Thus, they had the burden of showing there is no genuine issue of material fact and they are entitled to judgment as a matter of law by conclusively negating at least one essential element of each of Meekins's causes of action or conclusively establishing each element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). We take as true all evidence favorable to Meekins, and we indulge every reasonable inference and resolve any doubts in Meekins's favor. *Joe*, 145 S.W.3d at 157. We affirm the summary judgment if any of the theories presented to the trial court is sufficient to sustain the judgment. *Id.*

## I.     This is a trespass to try title case.

As an initial matter, we must determine the character of this lawsuit. Meekins contends it is a trespass to try title suit, while the Wisnoskis contend it is a collateral attack on the probate court's decree confirming sale of the property in the form of a declaratory judgment action. A trespass to try title action is a procedure by which competing claims to title or the right to possession of real property may be adjudicated. *Rogers v. Ricane Enters., Inc*., 884 S.W.2d 763, 768 (Tex. 1994); *see also* Tex. Prop. Code § 22.001. To recover, a claimant must establish a prima facie right of title by proving one of the following: (1) a regular chain of conveyances from the sovereign; (2) a superior title out of a common source;

5

(3) title by limitations; or (4) prior possession, which has not been abandoned. *Kennedy Con., Inc. v. Forman*, 316 S.W.3d 129, 135 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Given the mandatory language in Property Code section 22.001 ("[a] trespass to try title action is *the* method of determining title") (emphasis added), a party may not artfully plead a title dispute as a declaratory judgment action. *I-10 Colony, Inc. v. Lee*, 393 S.W.3d 467, 475 (Tex. App.—Houston [14th Dist.], pet. filed). The Declaratory Judgment Act "provides an efficient vehicle for parties to seek a declaration of rights under certain instruments." *Id.* (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004), *superseded on other grounds by statute*, Tex. Civ. Prac. & Rem. Code § 37.004(a)). If resolution of a dispute does not require a determination of which party owned title at a particular time, the dispute may properly be raised in a declaratory judgment action, if the requirements of the Texas Declaratory Judgments Act are satisfied. *Id.*

**Not a collateral attack on probate court's actions**. The probate court expressly stated that it would not determine title by approving the sale:

- "You want me to do a title opinion. I used to charge $200 an hour 15 years ago doing a title opinion. I don't do that anymore."

- "So I can approve a sale by [the receiver] of whatever he had under a special warranty deed. And if he didn't have anything, then [Meekins] still has it."

- "I don't think I have jurisdiction over what [Meekins] has. There's a considerable dispute about that, as I understand."

- "I want [Meekins] to go litigate in that county where that land is and not in my court. So I'm going to approve the sale, and I'm going to release the receiver."

- "When you're examining title, [a special warranty deed] doesn't do anything."

6

- "[A]ll I approved the receiver selling is what the estate owned."

Moreover, trespass to try title suits involve detailed pleading and proof requirements that were not addressed in the probate court. *See id.*; *see also* Tex. R. Civ. P. 783.

Meekins argues he did not ask the trial court in this case to set aside any "orders, findings, or judgments" of the probate court, but he asked the trial court to adjudicate title, which the probate court did not do. In his first amended petition, Meekins characterized the lawsuit as "a suit for declaratory judgment and to quiet title and trespass to try title." Meekins also asked the trial court for a judgment "that he has superior title to [the Wisnoskis] in the [p]roperty." The Wisnoskis argue that Meekins is actually complaining of the probate court's actions and, to do so, he was required either to appeal the probate court's order appointing a receiver to partition the property or decree confirming sale or file a bill of review.[4] We agree that Meekins may not complain of the probate court's actions in this case, but we conclude Meekins was entitled to ask the trial court to adjudicate title. We may not address whether the probate court erred in partitioning the property by sale or confirming the sale.[5] Thus, we may only address the effect of the sale.

---

[4] The Wisnoskis argue Meekins could have appealed either the probate court's order appointing a receiver or decree confirming sale because both were final and appealable. *See De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006) (acknowledging it is possible to have more than one final, appealable order in probate cases). The Wisnoskis further argue Meekins alternatively could have filed a bill of review to ask the probate court to revise and correct the order or decree. *See* Tex. Prob. Code § 31 (entitling any interested party to "have any decision, order, or judgment rendered by the [probate] court . . . revised and corrected on showing error therein" by filing a bill of review in the probate court within two years "from the date of such decision, order, or judgment"). Accordingly, Meekins was not entitled to attack the probate court orders to the degree he may have been attempting to do so by filing the underlying lawsuit. *See* Tex. Prob. Code § 31 (requiring bill of review to be filed within two years of entry of erroneous decision, order, or judgment); Tex. R. App. P. 26.1 (outlining time to perfect appeal).

[5] The Wisnoskis cite *White v. White*, 179 S.W.2d 503 (Tex. 1944) in support of their argument that the underlying lawsuit was an "impermissible collateral attack" on the probate

**Not a declaratory judgment action.**[6] In his original petition, Meekins brought a claim only for trespass to try title, but he amended his petition to add a claim entitled "declaratory judgment/suit to quiet title." Texas courts consider the substance and not the form of the pleadings to determine whether an action is properly considered as a trespass to try title or a declaratory judgment action. *Lee*, 393 S.W.3d at 476; *see also Kennedy Con., Inc.*, 316 S.W.3d at 135 ("Any suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of whether legal or equitable relief is sought."). The fact that Meekins added a declaratory judgment claim does not mean that the

court's decree confirming sale. That case involved an initial lawsuit filed in district court seeking to partition land among eight sibling heirs. *Id*. at 501. Meanwhile, one of the siblings filed an application to probate the will of the decedent mother in probate court wherein the sibling alleged he was entitled to the land under the will. *Id*. The probate court admitted the will into probate. *Id*. In the initial partition suit, the other siblings contested the will as being void. *Id*. at 502. The first sibling objected, arguing the will contest was a collateral attack on a duly probated will. *Id*. The district court in the initial partition suit sustained the objection to the will contest. *Id*. The district court also decreed that 9/16 of the land should vest in the sibling claiming entitlement under the will and ordered a partition of the remainder of the land among the siblings. *Id*. A receiver was appointed and filed a report indicating that he had sold the land. *Id*. The trial court entered judgment confirming the report, but the receiver died before the sale was consummated. *Id*. The judgment was not appealed. *Id*. The other siblings filed a will contest in probate court and successfully set aside the will. *Id*. They then filed a second lawsuit in district court seeking again to partition the land. *Id*. They did not attempt to set aside the former partition judgment. *Id*. at 503. The first sibling alleged the second partition suit was "purely a collateral proceeding seeking to vacate the former judgment which had become final." *Id*. The supreme court agreed, because the other siblings permitted the first partition suit "to proceed to judgment without filing a contest of the will in probate court or a plea in abatement in the district court" and the judgment in the first partition suit "was a final adjudication of the interests of the parties in the land." *Id*. at 506.

The facts of this case are distinguishable. Meekins does not seek to set aside the probate court's decree confirming sale. Rather, he asked the trial court to determine whether he has superior title to the Wisnoskis' title in the property, and as set forth above, the probate court expressly stated that it did not determine Meekins's interest in the property.

[6] In support of their contention that they were entitled to attorney's fees, the Wisnoskis argue this is a declaratory judgment action. Attorney's fees are not recoverable in a trespass to try title action but are recoverable in some circumstances in a declaratory judgment action. *Lee*, 393 S.W.3d at 477. We address this issue below.

8

lawsuit is in the nature of a declaratory judgment action in lieu of a trespass to try title action. *See Lee*, 393 S.W.3d at 476. His petition includes the pleading requirements for a trespass to try title action. *See* Tex. R. Civ. P. 783 (requisites of petition). Meekins's claim requires a determination of whether, after the sale, he or the Wisnoskis had title to the portion of the property formerly owned by Laverne. *See Lee*, 393 S.W.3d at 475. We conclude that the substance of Meekins's claim was a trespass to try title action rather than a declaratory judgment action. *See id.* at 476. With these principles in mind, we turn to Meekins's issues on appeal.

**II.     The receiver of Laverne's estate conveyed to the Wisnoskis the interests in the property that Laverne owned on the date of her death**.

In his first issue, Meekins argues the trial court erred in declaring the Wisnoskis own 100% of the surface estate and 50% of the mineral estate because Laverne's estate did not own any interest in the property when the receiver of the estate signed the Receiver and Guardianship Deed, and thus the receiver could not convey title to any interest in the property to the Wisnoskis. Meekins contends Laverne's estate did not have any interest in the property at the time of the sale because all of Laverne's interests terminated and vested in Meekins upon Laverne's death.

In support of their summary judgment motion, the Wisnoskis presented the following evidence relevant to our discussion:

- 1958 deed in which Kathleen Cox transferred to Meekins, Sr. and Laverne the surface estate and 1/32 NPRI and expressly reserved the remainder of the mineral estate;

- Will of Kathleen Cox devising the mineral estate (less the 1/32 NPRI), to Elloise Cox;

9

- Will of Elloise Cox devising half each to Meekins and Laverne of the mineral estate (less the 1/32 NPRI);

- 1998 Will of Laverne devising her property to Meekins;

- Probate court's order appointing the receiver to partition and sell the property;

- Probate court's decree confirming sale of the property; and

- Receiver and Guardianship Deed conveying the property to the Wisnoskis.

Meekins relied primarily on the same evidence in support of his response to the motion for summary judgment. Meekins proved without dispute that he inherited 50% of the mineral estate (less the 1/32 NPRI) from Elloise Cox, and the Wisnoskis do not dispute Meekins's assertion that this portion of the mineral estate was not part of the property sold in the probate proceeding.[7] Thus, the main issue is whether the Receiver and Guardianship Deed conveyed to the Wisnoskis the interests in the property that Laverne owned on the date of her death.

Meekins argues that the mineral estate and half the surface never belonged to Laverne's estate because it vested in him immediately when Laverne died. *See* Tex. Prob. Code § 37 ("When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will . . . shall vest immediately in the devisees or legatees of such estate . . . ; subject, however, to the payment of the debts of the testator."). Meekins asserts the deed did not transfer these interests to the Wisnoskis because a deed may convey only the interest a grantor has in the land. *See Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (Tex. 1956). Meekins is correct that a beneficiary under a will holds a vested interest in property upon the

---

[7] The partition order does not specify whether the probate court intended to partition the mineral estate or only the surface estate.

testator's death; however, the estate is subject to administration. *See Woodward v. Jaster*, 933 S.W.2d 777, 781 (Tex. App.—Austin 1996, no writ). The administrator of the estate holds legal title and a superior right to possess estate property and to dispose of it as necessary to pay the debts of the estate. Tex. Prob. Code § 37; *see also Woodward*, 933 S.W.2d at 781. If the administrator exercises this dispositive power, the sale divests the beneficiary of his interest in the property. *Woodward*, 933 S.W.2d at 781 (citing *Freeman v. Banks*, 91 S.W.2d 1078, 1079 (Tex. Civ. App.—Fort Worth 1936, writ ref'd); *Blinn v. McDonald*, 46 S.W. 787, 789 (Tex. 1898); *Harper v. Swoveland*, 591 S.W.2d 629, 630 (Tex. Civ. App.—Dallas 1979, no writ); and *Laas v. Seidel*, 66 S.W. 871, 872 (Tex. Civ. App.—Austin 1902, no writ)). Moreover, any person having a joint interest with the estate of a decedent in any property may apply for a partition and sale of the property. *See Luke v. Ormond*, 517 S.W.2d 647, 649 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ). Similarly, a probate court may appoint a receiver to partition and sell estate property for purposes of administration and settlement of the estate. *See In re Estate of Herring*, 983 S.W.2d 61, 65 (Tex. App.—Corpus Christi 1998, no pet.).

Here, although Meekins held a vested interest in the property devised to him by Laverne at the time of her death, his interest was subject to administration of the estate. Meekins, Sr.'s guardian filed an application for appointment of a receiver to sell the property to satisfy delinquent taxes. The probate court appointed a receiver to administer the sale of the Estate's interest in the property, pay the delinquent taxes and administrative fees, and distribute the remaining proceeds between Meekins and Meekins, Sr. Thus, the receiver, as the representative of the estate, was entitled to convey the property devised to Meekins to pay the tax debt. *See* Tex. Prob. Code § 37; *see also Woodward*, 933 S.W.2d at 781. Accordingly,

11

the receiver had the authority to convey the Estate's interest in the property to the Wisnoskis.[8]

The Wisnoskis assert that the deed unambiguously conveyed 100% of the surface estate and 50% of the mineral estate to them.[9]  The Receiver and Guardianship Deed expressly states that there is no reservation from the conveyance, and Meekins does not argue that the receiver or the guardian reserved from the conveyance any interest in the property held by Meekins, Sr. or by Laverne's Estate.  The summary judgment evidence conclusively proved that the Receiver and Guardianship Deed conveyed to the Wisnoskis title to all interests in the property held at the time of sale by Meekins, Sr. or by Laverne's Estate.

The construction of an unambiguous deed is a question of law for the court. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *Philipello v. Nelson Family Farming Trust*, 349 S.W.3d 692, 694 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).  In construing deeds, our primary objective is to ascertain the intent of the parties from the four corners of the deed.  *See Luckel*, 819 S.W.2d at 461; *Philipello*, 349 S.W.3d at 694.  To ascertain the parties' true intention, we examine the deed's language in its entirety.  *Luckel*, 819 S.W.2d at 461; *Philipello*, 349 S.W.3d at 694.  That intention, when ascertained, prevails over arbitrary rules of construction.  *Luckel*, 819 S.W.2d at 462; *Philipello*, 349 S.W.3d at 694.

Meekins acknowledges that the Receiver and Guardianship Deed does not include a reservation of the mineral estate, but instead relies on his argument that the mineral estate and half the surface estate never belonged to Laverne's estate.

---

[8] Meekins agrees that the guardian had the authority to convey Meekins, Sr.'s interest in the property to the Wisnoskis.

[9] A deed may convey only the interest a grantor has in the land.  *See Cockrell*, 299 S.W.2d at 675.  The parties agree that the deed did not convey to the Wisnoskis the 50% minerals (less 1/32 NPRI) that Meekins inherited from Elloise Cox.

12

As we have held that the receiver of Laverne's estate had the authority to convey to the Wisnoskis the 50% of the mineral estate owned by Laverne when she died, we would have to find that the deed included an implied reservation of minerals to hold that the deed did not convey the minerals to the Wisnoskis. A reservation by implication in favor of the grantor is not favored by courts. *Farm & Ranch Investors, Ltd. v. Titan Operating, L.L.C.*, 369 S.W.3d 679, 681 (Tex. App.—Fort Worth 2012, pet. denied); *see also Reeves v. Towery*, 621 S.W.2d 209, 212 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.).

Few Texas cases construe deeds to determine whether they include an implied reservation of mineral interests, but we find the *Farm & Ranch* case to be instructive. In that case, the Fort Worth Court of Appeals considered whether references in a deed to certain recorded deed restrictions were sufficient to reserve mineral interests. *Farm & Ranch*, 369 S.W.3d at 681. Caldwell's Creek, Ltd. was the owner of roughly sixty acres of land. *Id.* at 679. In 1994, Caldwell's Creek recorded a dedication and restrictions for that land in the county deed records, including one restriction stating that "[a]ll mineral rights shall belong and shall continue to belong to . . . Caldwell's Creek." *Id.* Subsequently, Caldwell's Creek divided the land into lots and sold those lots to individual owners. *Id.* Each of those deeds stated that "[t]his conveyance is made subject to any and all easements, restrictions, and mineral reservations" filed in the county deed records, but did not specifically reserve Caldwell's Creek's mineral interest. *Id.* In October 2005, Caldwell's Creek conveyed all of the mineral rights for the property to Farm & Ranch Investors, Ltd., which then attempted to lease the land to Titan Operating. *Id.* Titan ultimately refused to sign the lease and entered into leases with the individual lot owners. *Id.* Titan then filed suit against Farm & Ranch, seeking a declaratory judgment that it owned the mineral rights to the Caldwell's Creek land.

13

*Id.* The trial court granted Titan's motion for summary judgment. *Id.* at 680-81.

On appeal, Farm & Ranch argued that the original deed restrictions reserved the mineral rights to Caldwell's Creek and that the "subject to" language meant that the individual lot owners had only received the surface estate. *Id.* at 681. The court of appeals disagreed, holding, in relevant part, that the "subject to" language was not "a clear intention to reserve or except an interest from the conveyance." *Id.* at 683. Since there was no effective reservation of the mineral interest in the deeds to the lot owners, the court concluded Caldwell's Creek had conveyed its entire interest, including the minerals, to the lot owners. *Id.* at 684.

The Receiver and Guardianship Deed does not mention the reservation of minerals in the 1958 deed in which Kathleen Cox transferred the surface estate and a 1/32 NPRI to Laverne and Meekins, Sr. In fact, the Receiver and Guardianship Deed expressly states that it does not withhold any reservations: "Reservations from Conveyance: None." However, the deed does contain a reference in the property description to the 1958 deed, as follows:

> All that certain tract or parcel of land containing 180.726 acres, more or less, lying and being situated in the Tandy Walker Survey, Abs. No. 57, Grimes County, Texas and being all of a called 146-1/3 acre tract and all of a 40 acre tract ***described in Deed dated January 30, 1958 of record in Volume 228, Page 622, Deed Records, Grimes County, Texas*** and the 180.726 acres more fully described as set out on Exhibit "A" attached hereto and made a part hereof.

(Emphasis added.) Exhibit "A" contains "Field Notes" that further describe the property and also state that it is "described in a Deed from Mrs. Kathleen E. Cox to Robert Franklin Meekins and La Verne Cox Meekins, dated January 30, 1958, of record in Volume 228, Page 622 of the Deed Records of Grimes County, Texas."

These references to the 1958 deed do not contain a "clear intention to reserve or except an interest from the" Receiver and Guardianship Deed. *Compare*

14

*id.* at 682-83 (holding provision in deed that made conveyance "subject to . . . mineral reservations affecting said property" was not a clear intention to reserve an interest from the conveyance), *and Wright v. E.P. Operating L.P.*, 978 S.W.2d 684, 688 (Tex. App.—Eastland 1998, pet. denied) (same), *with Hunsaker v. Brown Distrib. Co.*, 373 S.W.3d 153, 157 (Tex. App.—San Antonio 2012, pet. denied) (holding deed conveying property "more particularly described on Exhibit A," which stated grantor was conveying one-half of property "now owned" by grantor, included reservations of mineral interests because deed also explained reservations were "outstanding" when grantor made conveyance and described the reservations).  Because there was no language in the Receiver and Guardianship Deed clearly showing a reservation of the mineral rights, the deed conveyed all of the grantors' interest to the Wisnoskis.  *See Farm & Ranch*, 369 S.W.3d at 683.  We overrule Meekins's first issue.

### III.    The take nothing judgment vests title in the Wisnoskis.

In his second issue, Meekins complains of the trial court's take nothing judgment against him because the effect of a take nothing judgment against a plaintiff in a trespass to try title suit is to vest title in the defendants.  *See Wells v. Kan. Univ. Endowment Ass'n*, 825 S.W.2d 483, 487 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  Thus, Meekins asserts the effect of the judgment would be to divest him of his right to the 50% of the mineral estate less the 1/32 NPRI that the Wisnoskis do not dispute he owns.  A defendant in a trespass to try title action may file a plea of "not guilty," which constitutes an admission by the defendant "that he was in possession of the premises sued for, or that he claimed title thereto at the time of commencing the action, unless he states distinctly in his answer the extent of his admission or claim, in which case, it [is] an admission to such extent only."  Tex. R. Civ. P. 788, 790.  Although the Wisnoskis do not

15

dispute that Meekins owns 50% of the mineral estate less the 1/32 NPRI, they did not expressly limit their answer to exclude that portion of the property.[10]

Nonetheless, in their summary judgment motion, the Wisnoskis only asked the trial court to rule as a matter of law that they held title to 100% of the surface estate of the property and 50% of the mineral estate. The Wisnoskis did not seek summary judgment as to the other 50% of the mineral estate, and they did not ask the trial court to render judgment that Meekins take nothing. As to the other 50% of the mineral estate in the property, the Wisnoskis did not assert in their motion that the summary judgment evidence conclusively proved that Meekins could not succeed in his trespass to try title action. Even if the Wisnoskis had asserted such a summary judgment ground, it would have lacked merit because the summary judgment evidence did not conclusively prove that Meekins could not succeed in his trespass to try title action as to the other 50% of the mineral estate. Thus, the trial court erred in granting summary judgment as to the part of Meekins's trespass to try title action that addresses Meekins's alleged title to the 50% of the mineral estate that Meekins purportedly inherited from Elloise Cox and in ordering that Meekins take nothing by his claims. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993); *Sec. Nat'l Ins. Co. v. Waloon Inv., Inc*., 384 S.W.3d 901, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Accordingly, we sustain Meekins's second issue.

## IV.    Attorney's fees are not available.

In his third issue, Meekins complains of the trial court's award of attorney's fees to the Wisnoskis because attorney's fees are not available in a trespass to try title suit. *See Lee*, 393 S.W.3d at 477 ("One key distinction between a trespass to

---

[10] However, in their answer, the Wisnoskis requested a judgment declaring they own 100% of the surface estate and 50% of the mineral estate.

16

try title action and a declaratory judgment action is that attorney's fees are not recoverable in the former but are recoverable in the latter."). The Wisnoskis argue this is a declaratory judgment action for which attorney's fees are available. *See id*. Because we have concluded, as set forth above, that this is a trespass to try title case, we hold the trial court erred in awarding attorney's fees to the Wisnoskis. We sustain Meekins's third issue.

To the extent that Meekins' trespass to try title action addresses Meekins's alleged title to the 50% of the mineral estate that Meekins purportedly inherited from Elloise Cox, we sever this portion of Meekins's trespass to try title action, reverse the trial court's judgment, and remand to the trial court for further proceedings consistent with this opinion. As to the remainder of the trial court's judgment, we modify the judgment to delete all awards of attorney's fees in favor of the Wisnoskis and to delete the order that Meekins take nothing by his claims. As modified, we affirm the remainder of the judgment.


/s/         Martha Hill Jamison
                 Justice

Panel consists of Justices Frost, Christopher, and Jamison.

17